**Joseph and Marjorie PROCOPIO, Plaintiffs,**

v.

**Gordon JOHNSON, Former Director, Illinois Department of Children and Family Services; Jess McDonald, Former Interim Director, Illinois Department of Children and Family Services; Sue Suter, Director, Illinois Department of Children and Family Services; Hephzibah Children's Association, a Not–For–Profit Corporation; and Lutheran Child and Family Services, a Not–For–Profit Corporation, Defendants.**

No. 91 C 5495.

United States District Court, N.D. Illinois, E.D.

March 19, 1992.

Robert Patrick Cummins, William Francis Dolan, Bickel & Brewer, Chicago, Ill., for Joseph Procopio and Marjorie Procopio.

Frank M. Grenard, Robin P. Charleston, Mitchell Ware, Jones, Ware & Grenard, Chicago, Ill., for Sue Suter.

George Freeman Galland, Jr., Davis, Miner, Barnhill and Galland, P.C., Dennis Minichello and Michael O'Neil, Keck, Mahin & Cate, Chicago, Ill., for Hephzibah Children's Ass'n.

Harvey J. Cohen, Merrill Craig Hoyt, Aries, Hoyt & Taden, William Edward Spizzirri, Kathleen Anne Johnson, Kralovec, Marquard, Doyle & Gibbons, Chtd., Chicago, Ill., for Lutheran Child and Family Services.

## ORDER

NORGLE, District Judge.

Before the court are the motions to dismiss of defendants Sue Suter ("Suter"), Hephzibah Children's Center ("Hephzibah"), and Lutheran Child and Family Services ("Lutheran Child"). For reasons that follow, the motions are granted.

## FACTS

The plaintiffs, Joseph and Marjorie Procopio (the "Procopios"), were foster parents to Ashley K. from June 1984, when Ashley was approximately two months old, until July 1989.[1] A juvenile court had removed Ashley from the custody of her unmarried natural parents, both heroin addicts, and placed the child with the Illinois Department of Children and Family Services ("DCFS"). DCFS, working with Lutheran Child, then placed Ashley with the Procopios. The Procopios were allegedly assured by DCFS officials at that time, and repeatedly over the next three years, that they would be allowed to permanently adopt Ashley.

Ashley's natural parents filed a juvenile court petition on December 29, 1988 seeking to regain custody of Ashley. DCFS, despite contrary recommendations in several psychological reports on Ashley, urged the return of Ashley to her natural parents. Additionally, in April 1989, DCFS began working with Hephzibah on a plan for implementing the return. The following July, DCFS removed Ashley from the Procopios' home and placed the child with Hephzibah. The juvenile court, on August 29, 1989, returned custody of Ashley to her natural parents. The Illinois Appellate Court, however, on April 17, 1991, reversed the juvenile court and ordered a new hearing on custody of Ashley.[2]

The Procopios initiated this federal litigation on August 29, 1991 by filing a three-count complaint, including one federal claim under 42 U.S.C. § 1983 alleging violation of their 14th Amendment due process rights, and supplemental state claims alleging fraudulent misrepresentation and intentional infliction of emotional distress.

The Procopios recently advised this court that on October 8, 1991, a Cook County associate judge vacated DCFS's guardianship of Ashley and granted custody of the girl to her natural parents.

## DISCUSSION

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991). The complaint must state either direct or inferential allegations concerning all material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir.1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 758 F.2d 203, 207 (7th Cir.1985). Moreover, dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can

---

1. The facts set forth herein are drawn from the Procopios' complaint.

2. *In re Ashley K.*, 212 Ill.App.3d 849, 156 Ill.Dec. 925, 571 N.E.2d 905 (1st Dist.), *appeal denied*, 141 Ill.2d 541, 162 Ill.Dec. 489, 580 N.E.2d 115 (1991). The Illinois Appellate Court opinion contains an extensive recitation of the facts regarding the custody case and the Procopios' relationship with Ashley.

prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transp. Servs., Inc.*, 795 F.2d 591, 594 (7th Cir.1986).

The moving defendants all seek dismissal of the complaint on the ground that the Procopios failed to state a claim under the 14th Amendment because they have not alleged a liberty or property interest subject to due process protection.

A procedural due process claim, as is raised here, requires evaluation of (1) whether the state has interfered with a liberty or property interest, and (2) "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). The plaintiff must show "a legitimate claim of entitlement" to the asserted liberty or property interest. *Id.* Protected liberty interests arise only from the due process clause itself or state law. *Id.; Pardo v. Hosier*, 946 F.2d 1278, 1281 (7th Cir.1991).

■ In this case, if there is a basis for the Procopios' asserted liberty interest in their relationship with their former foster daughter, it must be found in Illinois law. *See Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 846, 97 S.Ct. 2094, 2110, 53 L.Ed.2d 14 (1977) ("ascertain from state law the expectations and entitlements" of foster parents in determining the scope of their liberty interest). The Procopios argue that the length of time they had custody of Ashley and the alleged assurances by DCFS officials that the Procopios would be allowed to adopt Ashley permanently give rise to a constitutionally protected liberty interest. Nevertheless, they have not cited any Illinois statute or case law which directly supports their position.

Foster child-parent relationships in Illinois are governed or affected by several statutes. The Illinois Juvenile Court Act, for example, provides that with regard to custody, parental rights or delinquency hearings under the Act, "any current or previously appointed foster parent ... has the right to be heard by the court, but does not thereby become a party to the proceeding." Ill.Rev.Stat. ch. 37, ¶ 801–5(2) (1989); *see also In re M.W.*, 221 Ill.App.3d 550, 552, 164 Ill.Dec. 60, 61–62, 582 N.E.2d 268, 269–70 (3d Dist.1991) (foster parents have no right to intervene). Similarly, the Adoption Act provides that state-licensed foster parents who have cared for a child continuously for one year or more "may apply to the child's guardian with the power to consent to adoption, for such guardian's consent." Ill.Rev.Stat. ch. 40, ¶ 1519.1(a) (1989). That Act further provides that the guardian "shall give preference and first consideration" to a foster parent's application for adoption, subject to a variety of factors. *Id.*, ¶ 1519.1(b). The "final determination" regarding an adoption, however, rests within the "sole discretion" of the court hearing the matter. *Id.*, ¶ 1519.1(c). Moreover, consent of the natural parents, legal guardian, or an agency to which a child has been surrendered for adoption, is generally required before an adoption can take place. *Id.*, ¶ 1510.

The statutes cited above, while hardly an exhaustive survey of Illinois law regarding foster parents, adequately adumbrates the law for purposes of this case. Long-term foster parents are given what might be called an "inside track" to adoption. But they are not given any entitlement in this regard. The necessary consent and a judge's approval must still be obtained. The Procopios allege that DCFS was the legal guardian of Ashley, but do not clearly specify the natural parents' status. Only if the parents were judged to be unfit, or their parental rights judicially terminated, would their consent be unnecessary. *Id.*, ¶ 1510(a) and (b); *see also Paul v. Steele*, 101 Ill.2d 345, 351–52, 78 Ill.Dec. 149, 151, 461 N.E.2d 983, 985 (1984). *But see Lael v. Warga*, 155 Ill.App.3d 1005, 1011, 108 Ill.Dec. 518, 522–523, 508 N.E.2d 1095, 1099–1000 (4th Dist.) (unfit parent for custody purposes does not necessarily mean unfit to retain rights and privileges of parenthood), *appeal denied*, 116 Ill.2d 560, 113 Ill.Dec. 300, 515 N.E.2d 109 (1987). According to an Illinois Appellate Court opinion involving custody of Ashley, which the

Procopios cite in their complaint, the natural parents were found unfit. *In re Ashley K.*, 212 Ill.App.3d at 855–56, 156 Ill.Dec. at 928–29, 571 N.E.2d at 908–09. The consent of the guardian, DCFS, would apparently then be required, but the Procopios do not allege that they ever received that consent. Rather, they allege in essence that DCFS misled them about whether such consent would be forthcoming. Also missing is any allegation that judicial approval of the Procopios effort to adopt Ashley was obtained.

DCFS allegedly stirred up the Procopios' expectation that they would be allowed to adopt Ashley. That alleged expectation, however, could not have ripened into an entitlement, or a constitutionally recognized liberty interest, under the facts alleged in the complaint. Illinois law sets forth the requirements for adoption. The Procopios do not allege that those requirements were met. Additionally, there does not appear to be any basis for a permanent foster parent arrangement. Placement in a foster home is intended as a step toward a permanent arrangement. *See* Ill.Rev. Stat. ch. 37 ¶ 801–2(1) (1989) (among purposes of Juvenile Court Act is "to place the minor in a family home so that he or she may become a member of the family by legal adoption or otherwise"); *Kyees v. County Dept. of Public Welfare*, 600 F.2d 693, 698–99 (7th Cir.1979) (rejecting foster parents' liberty interest after reviewing Indiana law; "virtual certainty of eventual termination of foster relationship").

The Illinois statutory scheme lacks any "explicitly mandatory language" directing that an adoption be granted, or requiring that a foster relationship be maintained, if certain preconditions are met. *See Thompson*, 490 U.S. at 463, 109 S.Ct. at 1910 (state creates a liberty interest when it uses "explicitly mandatory language" requiring a specific outcome under certain conditions) (citing *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983)). Objectively viewed, as long as the Procopios remained foster parents to

Ashley, they could not reasonably believe that Illinois law gave them a right to permanent custody or a permanent relationship with the girl.

The natural parents never fully lost their parental rights with regard to Ashley. They therefore retained liberty interests in their relationship with their daughter cognizable under the 14th Amendment. *See Lossman v. Pekarske*, 707 F.2d 288, 290 (7th Cir.1983) (14th Amendment liberty rights in custody of children) (citing *Stanley v. Illinois*, 405 U.S. 645, 657–58, 92 S.Ct. 1208, 1215–16, 31 L.Ed.2d 551 (1972)). It would be anomalous to find that both the Procopios and the natural parents had liberty interests regarding Ashley at the same time. The continued existence of the natural parents' rights buttresses the court's conclusion that the Procopios lacked a liberty interest, regardless of the length of their foster parenthood.

Neither the Procopios' long-term foster relationship nor DCFS's alleged assurances of adoption created a liberty interest cognizable under the 14th Amendment. Count I of their complaint is therefore dismissed for failure to state a claim upon which relief can be granted.[3]

■ The court, in its discretion, declines to exercise its supplemental jurisdiction over the remaining state claims, and Counts II and III are accordingly dismissed as well. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

CONCLUSION

For the above reasons, the defendants' motions to dismiss are granted and the complaint is dismissed as to all defendants.

IT IS SO ORDERED.

---

**3.** The complaint is dismissed *sua sponte* with regard to defendants Gordon Johnson and Jess McDonald. The court's holding with regard to the defendants who moved for dismissal applies equally to Johnson and McDonald. Moreover, the plaintiffs will not be prejudiced by the court's action in view of their opportunity to respond to the moving defendants' arguments.