JOHN C. LAEL *et al.*, Petitioners-Appellants, v. JOHN CHRISTOPHER WARGA *et al.*, Respondents-Appellees.

Fourth District No. 4—86—0439

Opinion filed May 21, 1987.

McCULLOUGH, J., dissenting.

David E. Leefers, of Jacksonville, for appellants.

J. H. Weiner, of J. H. Weiner Law Office, P.C., and Michael J. Costello, both of Springfield, for appellees.

JUSTICE KNECHT delivered the opinion of the court:

Petitioners John C. Lael and Michelle Ronae Lael (petitioners) filed a petition for adoption in the Morgan County circuit court on August 5, 1985. The Laels sought to have Mrs. Lael's former husband, John Edward Warga (respondent), declared an unfit parent and to adopt the two children born of the marriage of Mrs. Lael and respondent Warga. The circuit court found respondent Warga was not an unfit parent and dismissed the petition for adoption. Petitioners appeal from that order.

The only issue raised on appeal is whether the circuit court erred in finding Warga was not a "habitual drunkard" such as would make him an unfit parent pursuant to section 1 (D)(k) of "An Act in relation to the adoption of persons, and to repeal an act therein named" (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(k)). Because the weight of the evidence is at issue, we must outline the pertinent testimony in some detail.

Respondent John Warga first took the stand as an adverse witness. Warga testified he was 41 at the time of the hearing and had been drinking beer since he was 16 years old. From the time of his marriage to Michelle Lael in 1973 until the time the petition was filed in August 1985, he had consumed beer daily. Warga admitted to suffering blackouts during alcohol usage, but stated the last such blackout had been in August 1983. Warga denied he consumed an average of 12 cans of beer per day as alleged by his former wife. When asked to estimate the volume of beer he consumed, Warga replied, "I don't count them, so I really don't know. There's sometime [*sic*] I only have five or six." Warga elaborated that whether he had 5 to 6 cans of beer as opposed to "10 or 12" depended upon whether he was working. Warga further testified that prior to leaving his job as a pharmacist at the Lincoln Square Healthmart in September 1984, he would consume beer at his place of business on a daily basis. Warga explained he "might have one before I went home, after, the door was locked." Warga stated he had never sought treatment or education for an alcohol problem. Warga admitted that during his marriage he had a special refrigerator stocked with beer in his bedroom and then other locations thereafter.

Warga also testified concerning various altercations with his stepchildren. On March 15, 1985, Warga testified to a confrontation with his stepdaughter, Kimberly Fulfer, during which she struck him with a telephone. Warga testified he had consumed three or four cans of beer prior to this incident. Warga also testified concerning a confrontation

with stepson David Fulfer in mid-July 1985. A dispute apparently arose as to whether Fulfer should turn off the television and go to bed. Warga stated he struck David Fulfer during this incident, but noted that Fulfer was armed with a metal fireplace poker. Warga testified he had consumed seven or eight cans of beer prior to this incident, but did not feel he was intoxicated.

Petitioner Michelle Lael testified to her former husband's alcohol consumption during their marriage, which was ended in August 1983. Lael testified that Warga drank daily during their marriage, averaging 12 cans of beer per day, while consuming up to 1½ cases (36 cans) on the alternate weekends when he was not working. She estimated her husband was intoxicated three times per week during their marriage. Mrs. Lael also recounted several incidents over a period of several years which resulted from excessive drinking by her husband.

Charitie Ann McGuire, Mrs. Lael's sister-in-law, testified she was a frequent visitor to the Warga household prior to the Warga's divorce. McGuire estimated that she was in the Warga home two or three times per week prior to the divorce, as well as working at the establishment where John Warga was employed. McGuire testified to seeing John Warga drink 12 cans of beer after work approximately one time per week. On other occasions during an average week, she observed Warga consume at least a six-pack of beer. McGuire testified she had seen Warga drink himself into a daze at parties, but that he was not drunk to the point of falling down. She estimated she saw Warga under the influence of alcohol one or two times per week at the Warga's house prior to the 1983 divorce.

John Michael McGuire, Michelle Lael's brother, testified he was in the Warga home three or four times per week prior to the divorce. McGuire observed Warga drink 6 to 12 cans of beer during these visits to the home. McGuire estimated he saw John Warga under the influence of alcohol approximately three times per week until 1983. He described John Warga as slurring his speech and staggering when he walked.

Kimberly Fulfer, John Warga's stepdaughter, testified she lived primarily with her mother and Warga until August 1985. She stated Warga drank beer every day when she lived with him, starting to drink around noon and continuing until retiring at midnight.

Stepson David Fulfer testified he lived with his mother and John Warga until July 1985. He testified that during that period, John Warga drank daily from approximately 9:30 a.m. until going to bed. Fulfer estimated Warga consumed a case of beer daily.

Julia Warga, John Warga's wife, testified on his behalf. She did not

estimate the frequency or amount of John Warga's alcohol consumption, but stated she did not believe her husband spent an excessive amount of money on beer.

Sheryl Johnson testified as an expert witness, describing her position as "education program coordinator at Jacksonville Area Council on Alcoholism." She testified she had been doing alcohol counselling since 1978 and was licensed by the Department of Alcohol and Substance Abuse and the Illinois Alcohol and Other Addictions Certification Board. She noted that to be licensed as an alcohol counselor, one must have completed two years of college, have four years of work experience in the alcohol and drug field, and two years of supervised alcohol assessment experience. Johnson testified her agency conducts 30 to 40 assessments each month, including assessment of court-referred DUI offenders. Although Johnson believed herself qualified to give an opinion as to whether a person was an alcoholic, based upon observing various symptoms, she acknowledged only a physician was qualified to diagnose a given individual as "alcoholic."

Johnson gave an opinion as to whether John Warga had a problem with alcohol using standards promulgated by the American Medical Association (AMA). Johnson testified the AMA had established four categories of drinkers: (1) social drinkers; (2) heavy drinkers; (3) alcohol abusers; and (4) alcohol dependents. Johnson defined a heavy drinker as an individual who consumes five drinks of alcohol in a sitting at least twice per week. She defined an alcohol abuser as one who drinks excessively on different occasions when prompted to do so by job stress, grief, loneliness, or other such stimulus. An alcohol dependent was defined as equivalent to an alcoholic.

Responding to a hypothetical in which counsel described a person who consumed alcohol daily, became intoxicated approximately three times per week, and who exhibited behavior testified to by Mrs. Lael and the McGuires, Johnson stated the hypothetical person would be alcohol dependent. When the hypothetical was changed to reflect consumption of five to six servings of beer per day on a daily basis, Johnson testified the hypothetical person was at least a heavy drinker. She further noted that a person who had consumed five to six servings of beer daily for a period of 13 years was an excessive drinker with "a fixed pattern of drinking excessively."

Following the hearing, the circuit court entered a memorandum of decision on May 28, 1986. In that memorandum, the court stated:

> "It is clear from the evidence that the Father [John Warga] has, for a long period of time, consumed beer regularly and in substantial amounts. The question is not, of course, whether he

regularly consumed beer in such amounts but whether, given all of the evidence, the Court is able to find, by clear and convincing evidence, that he is a 'habitual drunkard' as defined by case law in Illinois. \*\*\* [T]he Court finds that the allegation of habitual drunkenness has not been proved by clear and convincing evidence. It is, admittedly, a close case on the facts and the law. While there is much evidence of the regularity and amounts of beer drinking, the effect of that behavior upon the Father is not so clear. Among other facts, the Court notes that the Father worked extremely long hours at his business and did so with notable regularity over a period of years until the family business broke up and he became unemployed. That does not sound like the habits of one who is habitually drunk. There was precious little convincing evidence from any source that he habitually drank beer to the point of staggering or passing out—that is, to the point of 'drunkenness.' "

The court noted that since it had not found John Warga to be unfit, it neither reached nor heard evidence upon the issue of whether the best interests of the children would be best served by petitioners' adopting them.

■ We must first address the issue, raised by respondent Warga, of whether the circuit court properly considered evidence of events taking place prior to the parties' divorce. Respondent contends his fitness was at issue in deciding custody during the parties' divorce action and further consideration of this issue is barred by the doctrine of collateral estoppel.

Warga's contention is without merit. We reject this argument because respondent failed to prove the adoption petition was barred by the doctrine of *res judicata*. To claim *res judicata*, of which the collateral estoppel doctrine is a branch, the party asserting the doctrine must raise it in a pleading or by a motion to dismiss. (*La Salle National Bank v. County of Du Page* (1979), 77 Ill. App. 3d 562, 396 N.E.2d 48; see also Ill. Rev. Stat. 1985, ch. 110, pars. 2—613(d), 2—619(a)(4).) Moreover, the party asserting *res judicata* has the burden of proving the existence and legal effect of the former judgment with relation to the action sought to be barred. *La Salle National Bank v. County of Du Page* (1979), 77 Ill. App. 3d 562, 396 N.E.2d 48.

■ Respondent Warga neither pleaded nor proved *res judicata* in any of its forms. Some discussion of the doctrine took place before trial at a hearing held to determine whether evidence of activity occurring prior to the entry of the divorce decree would be permitted. However, we find this reference insufficient to raise *res judicata* or collat-

eral estoppel as an affirmative defense.

Even had the respondent Warga properly raised *res judicata* or collateral estoppel at the trial court, we would not find the petition for adoption barred by virtue of the divorce and custody proceedings. Under the "estoppel by judgment" branch of *res judicata* doctrine, a final judgment on the merits rendered by a court with jurisdiction is conclusive as to the rights of the parties and their privies. As to those persons, the judgment constitutes an absolute bar to any subsequent action involving the same claim, demand, or cause of action and extends both to matters decided and that could have been decided. *Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 50, 430 N.E.2d 620, 622; *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 375-76, 444 N.E.2d 205, 208.

Under the "collateral estoppel" branch of the *res judicata* doctrine, a judgment between the parties in the former action estops the parties from relitigating any matter that was an issue and necessarily decided in the original action. However, collateral estoppel does not apply to issues that were not actually decided or that were incidental and not essential to the judgment in the prior action. *Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 50, 430 N.E.2d 620, 622; *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 375-76, 444 N.E.2d 205, 208.

■ In an adoption proceeding, unlike a custody determination, the natural parent is relieved of all parental responsibilities and rights with regard to the child. The custody proceeding is concerned only with determining who shall have custody of the child. (*In re Adoption of Schumacher* (1983), 120 Ill. App. 3d 50, 458 N.E.2d 94.) Although the primary consideration in a custody dispute is the welfare and best interest of the child (*In re Marriage of Leopando* (1982), 106 Ill. App. 3d 444, 435 N.E.2d 1312, *aff'd* (1983), 96 Ill. 2d 114, 449 N.E.2d 137), it is not necessary to find one parent unfit in order to award custody to the other parent (*In re Marriage of Macaluso* (1982), 110 Ill. App. 3d 838, 443 N.E.2d 1). Although evidence of alcohol or drug abuse may be relevant to a custody decision to the extent it affects a parent's mental or physical health and relationship with their children, such evidence is only one aspect of the custody determination. (*In re Marriage of Rizzo* (1981), 95 Ill. App. 3d 636, 420 N.E.2d 555.) Although a parent may be unfit to have custody of their children, it does not follow that the parent is unfit to remain the children's legal parent with the attendant rights and privileges. (See *In re Bredendick* (1979), 74 Ill. App. 3d 946, 393 N.E.2d 675.) In short, custody determination and adoption proceedings are two distinct procedures. A determination in

the former does not affect the determination of parental fitness for the latter. Thus, neither *res judicata* nor collateral estoppel apply in the circumstances present here.

 █ We next turn to the petitioners' contention that the trial court erroneously determined they had failed to prove the respondent an unfit parent. Under the adoption act, the court must first determine whether a nonconsenting parent is unfit. It then decides whether adoption is in the best interests of the child. (*Perkins v. Breitbarth* (1981), 99 Ill. App. 3d 135, 424 N.E.2d 1361.) Proof of a parent's unfitness must be by clear and convincing evidence (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 1510), and this court will overturn the trial court's ruling on a parent's fitness only when it is against the manifest weight of the evidence (*In re Nitz* (1979), 76 Ill. App. 3d 15, 394 N.E.2d 887).

Section 1(D)(k) defines an "unfit person" as:

> "[A]ny person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption, the grounds of such unfitness being any one or more of the following:
>
> * * *
>
> (k) [H]abitual drunkenness or addiction to drugs, other than those prescribed by a physician, for at least one year immediately prior to the commencement of the unfitness proceeding." (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 1501(D)(k).)

This court has previously stated "habitual drunkenness" under the adoption act should be defined as it was under the former divorce act. (*In re Sanders* (1979), 77 Ill. App. 3d 78, 395 N.E.2d 1228; see Ill. Rev. Stat. 1973, ch. 40, par. 1 *et seq.*) In *Garrett v. Garrett* (1911), 252 Ill. 318, 96 N.E. 882, the Illinois Supreme Court defined habitual drunkenness as:

> "[A]n irresistible habit of getting drunk; [citation;] a fixed habit of drinking to excess; [citation;] an involuntary tendency to become intoxicated, which is acquired by frequent repetition,— such as frequent indulgence to excess as to show a formed habit and inability to control the appetite. [Citations.]" (252 Ill. 318, 326, 96 N.E. 882, 885.)

The appellate court has noted the habitual drunkard is "a person given to inebriety or excessive use of intoxicating drink who has lost the power of will by frequent indulgence to control his appetite for it." *Ash v. Ash* (1946), 327 Ill. App. 656, 659, 64 N.E.2d 741, 743.

 Applying *Garrett* and *Ash* to the facts of the instant case, we conclude the petitioners clearly and convincingly established John Warga was a habitual drunkard. Each person who testified, including

Warga himself, established that the respondent had an unvarying habit of drinking large quantities of beer every day since at least 1973. The testimony of Michelle Lael and the McGuires, confirmed by the respondent's own admissions, established that John Warga drank daily and excessively. Warga's own statements plus the testimony of his stepchildren, the Fulfers, combined to clearly establish this drinking pattern continued up to the time of the hearing. In addition, Sheryl Johnson testified as an expert that respondent's drinking habits during the course of his marriage to Michelle Lael put him in the category of "alcohol dependent." Using only the respondent's own testimony that he had consumed five to six servings of beer daily for a period of 13 years, Johnson concluded that John Warga was an excessive drinker with a "fixed pattern of drinking excessively."

■ This adoption action followed a bitter dissolution and several years of post-dissolution conflict. The trial judge, in assessing credibility, may well have discounted the testimony of some of petitioners' witnesses. However, almost none of the evidence of Warga's alcohol usage was rebutted or denied. Where such a quantity of evidence is not denied or inherently incredible, the fact finder cannot disregard it. *Dill v. Widman* (1952), 413 Ill. 448, 109 N.E.2d 765; *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 315, 469 N.E.2d 183, 189.

The trial judge called this a close call on the law and the facts, and relied in part on Warga's regular employment over a number of years to conclude Warga did not have "the habits of one who is habitually drunk." But habitual drunkenness can exist even if the drinker maintains employment and does not regularly stagger or pass out.

The test is whether Warga had a fixed habit of drinking to excess and whether his usage was so frequent as to show an inability to control his need or craving for alcohol. (*Garrett v. Garrett* (1911), 252 Ill. 318, 96 N.E. 882.) We believe the test was met.

The large volume of evidence in this case establishes that respondent drank excessively up to the time of the hearing and was a habitual drunkard. He made no effort to curtail his drinking or seek treatment to ameliorate his alcohol problem. This is not a case of a problem drinker attempting to change or control his problem as in *In re Sanders* (1979), 77 Ill. App. 3d 78, 395 N.E.2d 1228.

■ We conclude the circuit court's finding that respondent John Warga was not proved to be an habitual drunkard for the one year preceding the filing of the petition for adoption is against the manifest weight of the evidence. Accordingly, we reverse the finding of the Morgan County circuit court that respondent John Warga was not an unfit

parent and remand this cause so the circuit court may determine whether granting the petition for adoption would be in the best interests of the Warga children.

Reversed and remanded.

GREEN, J., concurs.

JUSTICE McCULLOUGH, dissenting:

The evidence presented to the trial court certainly would have justified the trial court in finding that the respondent was unfit on the grounds of drunkenness. The trial court observed the witnesses, had the opportunity to judge their credibility, and determined, based on that testimony and evidence, that the father was not unfit because of drunkenness.

With respect to the stepchildren, Kimberly and David, the trial court could very well have viewed their testimony as biased. Although Warga testified as to drinking prior to confrontations with them, the stepchildren described the incidents as discipline problems with little or no reference to Warga's drinking. The testimony of Charitie Ann McGuire and John M. McGuire, Lael's brother and sister-in-law, concerned principally the time period prior to the 1983 divorce.

Michelle Lael testified to her former husband's alcohol consumption during their marriage. She testified that he drank daily during their marriage averaging 12 cans of beer per day and consuming up to 36 cans on alternate weekends when he was not working and that he was intoxicated on a basis of about three times per week during their marriage. This is the same person who testified she separated from Warga in 1981 for a period of time, moving to Springfield, leaving the children with their father in Jacksonville.

There also is no showing with respect to any impact on the children or any testimony of unfitness as a father because of the alleged drunkenness.

The evidence was not clear and convincing and this court should not overturn the trial court's ruling unless it is against the manifest weight of the evidence. It is not.

Evidence of drinking, yes. Evidence of drunkenness, no.

We should not substitute our judgment for that of the trial judge. I would affirm the trial court.