617 N.E.2d 1207 (1993)
247 Ill. App.3d 803
187 Ill.Dec. 486
In re B.C. & W.C., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Cheryl C., Respondent-Appellant).
No. 3-92-0816.
Appellate Court of Illinois, Third District.
May 27, 1993.
As Modified on Denial of Rehearing July 26, 1993.
*1208 Phillip Pollock, Peoria, for Cheryl C.
John X. Breslin, Deputy Director State's Attys., Appellate Prosecutor, Ottawa, Kevin W. Lyons, State's Atty., Peoria, J. Paul Hoffmann, State's Attys., Appellate Prosecutor, Ottawa, for the People.
Justice LYTTON delivered the opinion of the Court:
The trial court found the respondent mother, Cheryl C., to be an unfit parent (750 ILCS 50/1(D)(i) (West (1992)). Thereafter, the court terminated her parental rights to W.C. and B.C. She appeals, and we affirm in part and reverse in part.
The record shows that on November 8, 1991, the State filed a petition for adjudication of wardship alleging that the two children were dependent due to the respondent's incarceration. On that date, the trial court ordered the children to be placed in the temporary custody of the Department of Children and Family Services.
Thereafter, the State filed a petition alleging that the respondent was an unfit parent because she was a depraved person. The basis for this allegation was that in 1983 the respondent had been convicted of one count of felony residential burglary and two counts of theft. In addition, she had two misdemeanor prostitution convictions in 1990 and a felony prostitution conviction in 1991. The petition also alleged that the respondent had pled guilty to attempted transmission of HIV in 1991, and had used heroin and cocaine from 1978 to 1990.
*1209 At the adjudication hearing, the respondent admitted committing several of the above crimes but denied that she had attempted to transmit HIV. She also denied that she had used drugs from 1978 to 1990. The respondent testified that after she had been in a drug rehabilitation program in 1983 or 1984, she stopped using drugs for a long time. She had a brief relapse when her mother died and then used drugs only about four to five times a year from 1986 to August of 1990. She stated that she has not used any drugs since August of 1990 even though they were available to her in prison.
Regarding her conviction for attempted transmission of HIV, the respondent testified that she only pled guilty as part of a plea bargain. She noted that she had tested positive for HIV in October of 1990, but tested negative for HIV in January of 1991, and at the time of her plea she had not yet received the results of a third test. The record shows that the trial court believed her testimony on this point and found that the State had failed to prove that the respondent agreed to engage in sexual activity for cash knowing that she had tested positive for HIV. However, based on the other evidence, the court found that there was sufficient evidence to support a finding that the respondent was a depraved person.
On appeal, the respondent first argues that the trial court erred in finding her to be an unfit person. We disagree.
It is well settled that a finding of unfitness will not be reversed unless it is against the manifest weight of the evidence. (In re J.R. (1985), 130 Ill.App.3d 6, 85 Ill.Dec. 410, 473 N.E.2d 1009.) The trial judge's findings of unfitness should be given great deference, since the judge's opportunity to view and evaluate the parties and their testimony is superior to that of a reviewing court. (In re Brown (1981), 86 Ill.2d 147, 56 Ill.Dec. 4, 427 N.E.2d 84.) Depravity of a parent may be shown by a series of acts or a course of conduct that indicates a moral deficiency and an inability or unwillingness to conform to accepted morality. (In re J.A. (1986), 145 Ill.App.3d 816, 99 Ill.Dec. 605, 495 N.E.2d 1340.) Although a single felony conviction is not sufficient in and of itself to establish the depravity of a parent, a number of convictions can be sufficient since they can establish a pattern of criminal activity. In re M.B.C. (1984), 125 Ill.App.3d 512, 80 Ill. Dec. 821, 466 N.E.2d 273.
Here, the record shows that the respondent has a number of convictions which support the trial court's finding that the respondent is unable to conform to acceptable standards of morality. As such, since the evidence supports the trial court's finding, we cannot say that the court's finding of unfitness was against the manifest weight of the evidence.
The respondent's next issue concerns the dispositional hearing. The record from that hearing shows that W.C.'s foster mother, Kathy Jo Buehrer, testified that W.C. did not want to be adopted "if his mom can be his mom." She stated that 10-year-old W.C. loves his mother and wants to continue seeing her. In addition, she admitted that she would not want to tell W.C. that he could not see his mother because of the emotional problems it could create for W.C.
Buehrer also testified that W.C. loves her and her husband. She stated that they would adopt him if that was what he wanted. She also noted that even if they never adopted him, he could live with them for as long as he desired.
Helen Edwards, a DCFS worker assigned to W.C.'s case, testified that it was not in W.C.'s best interest to be adopted. She noted that W.C. loves his mother very much and has a strong desire to be with her. Finally, she stated that W.C. would suffer emotional trauma if his mother's parental rights were terminated.
The respondent testified that she has taken advantage of various programs for her rehabilitation since being incarcerated in 1991. She noted that she has taken classes in building maintenance and technical math, and has participated in a religions program. In addition, she has enrolled in a pre-start program which is aimed at helping *1210 her re-establish herself in society. Finally, she noted that she now goes to church and participates in group therapy.
She testified that as a result of her participation in these activities, she has gained new insights into the cause of her problems and is determined to "turn her life around." She spoke about her plans for the future, which included continued drug counseling, continuing her education, and encouraging her children to value family, religion, and education.
The record also shows that she knew that even if the court did not terminate her parental rights, she would not get her children back immediately. She understood that in order to do so, she had to get a job and show that she had improved her circumstances.
Based on the above evidence, the trial court found that it was in the children's best interest to terminate the respondent's parental rights.
On appeal, the respondent argues that the trial court erred in terminating her parental rights. We agree.
In Santosky v. Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599, the United States Supreme Court stated that the interest of natural parents in the care, custody, and management of their children is a fundamental liberty interest protected under the fourteenth amendment, and that when a State seeks to terminate the rights of parents in their natural child, the State must provide the parents with procedural protections meeting the requisites of the Due Process Clause. That is, "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." (Santosky, 455 U.S. at 747-48, 102 S.Ct. at 1391-92, 71 L.Ed.2d at 603.) The Illinois Supreme Court adopted this analysis in In re Enis (1988), 121 Ill.2d 124, 117 Ill.Dec. 201, 520 N.E.2d 362. See also In re Paul (1984), 101 Ill.2d 345, 78 Ill.Dec. 149, 461 N.E.2d 983 (stating that parental rights and responsibilities are of deep human importance and will not be lightly terminated).
Although a parent may be unfit to have custody of his or her children, it does not follow that the parent cannot remain the children's legal parent with the attendant rights and privileges. (Lael v. Warga (1987), 155 Ill.App.3d 1005, 108 Ill.Dec. 518, 508 N.E.2d 1095.) However, once evidence of parental unfitness has been found, all of the parent's rights must yield to the best interest of the child. In re T.G. (1986), 147 Ill.App.3d 484, 101 Ill.Dec. 188, 498 N.E.2d 370.
In the case at hand, we find that the State failed to prove by clear and convincing evidence that it was in the children's best interest to sever the respondent's parental rights. We initially note that the respondent's parental rights were apparently terminated solely for the fact that she was found to be a depraved person. As the record from the termination hearing shows, no evidence was presented regarding the termination other than the finding of unfitness. We find this to be insufficient evidence to support a termination order. We note that when the State relies solely upon a finding of depravity to support the termination of parental rights, it must establish some connection between the depraved conduct and the alleged need to terminate parental rights. See generally Lael v. Warga (1987), 155 Ill.App.3d 1005, 1011, 108 Ill.Dec. 518, 522-523, 508 N.E.2d 1095, 1099-1100.
The trial court erred in terminating the respondent's parental rights because all of the evidence presented showed that such a finding was not in the best interest of the children. The record clearly showed that W.C. loved his mother and that she loved him. In addition, as the foster mother implied, and the social worker stated directly, it was not in W.C.'s best interest to terminate his mother's parental rights.
Ample evidence was presented showing that the respondent had rehabilitative potential and was trying to better herself. She was taking classes and receiving counseling to make a better life for herself and her children. Since the evidence in this *1211 case was not clear and convincing, we find that the trial court erred in terminating the respondent's parental rights.
Accordingly, the judgment of the circuit court of Peoria County is affirmed as to its finding of unfitness and reversed as as to its termination of the respondent's parental rights.
Affirmed in part and reversed in part.
McCUSKEY, P.J., and STOUDER, J., concur.