DANIEL REGAN *et al.*, Plaintiffs-Appellees, v. JOSEPH P. *et al.*, Defendants-Appellants.

Third District   No. 3—95—0654

Opinion filed March 7, 1997.

890

Michael L. Dietchweiler and Richard J. Casey (argued), both of LaBeau, Dietchweiler & Associates, and Michael R. Berz, all of Kankakee, for appellants.

Scott Reich, of Mason, Orloff, Reich, Troy & Thanas, of Joliet, and Richard A. Lifshitz, of Mandel, Lipton & Stevenson, of Chicago, for appellees.

Lea A. Drell (argued), of Stuhr & Drell, of Joliet, guardian *ad litem.*

JUSTICE HOLDRIDGE delivered the opinion of the court:

Defendant, Joseph P., appeals from orders of the circuit court of Will County that found him unfit, terminated his parental rights with respect to his son, J.E.P. (the child), and granted plaintiffs', Daniel Regan and Kelly Regan, f/k/a Kelly P. (the Regans'), petition for adoption of the child. On appeal, defendant contends that the circuit court's unfitness finding and termination of his parental rights were against the manifest weight of the evidence and, further, that the circuit court erred in granting the Regans' petition for adoption absent a best interest hearing. For the reasons discussed, we reverse.

## FACTS

Defendant and Kelly were married in June 1987. The child was born on May 19, 1989, and has remained in Kelly's custody since birth. Defendant and Kelly separated in March 1991, and a petition for dissolution of marriage was filed by Kelly on March 18, 1991. A judgment for dissolution of the parties' marriage was entered on February 27, 1992, and defendant was ordered, *inter alia*, to pay child support.

On August 14, 1992, an *ex parte* order of protection was entered, prohibiting defendant's visitation with the child. The order was predicated upon his intoxication and violence toward Kelly during a scheduled visit and was effective until October 22, 1992. The order thereafter was modified to permit supervised visitation and ultimately extended to February 26, 1993.

On February 26, 1993, a plenary order of protection was issued. The order provided defendant with "no visitation" and was predicated upon his intoxication at the time of an initiated visit. This order expired on September 1, 1994.

On March 8, 1994, the Regans filed a petition for adoption seeking to adopt the child. Personal service was unsuccessful and original service was by publication, with defendant first becoming aware of the adoption on July 28, 1994. In October 1994, the Regans amended the petition for adoption, alleging defendant was unfit and seeking termination of his parental rights.

In October 1994, a fitness hearing was held, and on November 2, 1994, the circuit court entered its final order determining that, based upon four conditions found in section 1(D) of the Illinois Adoption Act (the Act) (750 ILCS 50/1(D) (West 1992)), the Regans had established by clear and convincing evidence that defendant was unfit and terminated his parental rights.

On November 3, 1994, without holding a best interest hearing, the circuit court entered a minute order granting the Regans' petition for adoption. On December 12, 1994, the circuit court denied defendant's motion for reconsideration and denied his motion to have the November 2, 1994, order made final and appealable.

In August 1995, the circuit court entered an order ruling that upon the execution of its November 2, 1994, order, which found defendant unfit and terminated his parental rights, defendant had no further interest in the matter. The parties maintain that this August 1995 order in effect made the November 2, 1994, judgment terminating defendant's paternal rights final and appealable.

## I

■ The rights of a natural parent to his child cannot be severed

unless a clear and convincing finding is made in strict compliance with the Act. *In re Grant*, 29 Ill. App. 3d 731, 735-36 (1975).

■ When a petition for adoption alleges that a parent is unfit, abrogating the need for that parent's consent to the adoption, the first determination made prior to granting the adoption is a determination that the parent is unfit. *In re Adoption of Syck*, 138 Ill. 2d 255, 278 (1990); *In re Petition of Kirchner*, 164 Ill. 2d 468, 482-83 (1995) (a prior showing of unfitness is thought to be in the child's best interest). If the parent is found unfit, the second determination made is whether the adoption is in the child's best interest. *Syck*, 138 Ill. 2d at 276, citing *In re Adoption of Burton*, 43 Ill. App. 3d 294, 299-302 (1976). However, if the parent is found fit, that parent's rights are "superior to the right of any other person and a best-interests hearing would thus be improper." *Kirchner*, 164 Ill. 2d at 481.

■ A finding of unfitness as the basis for termination of parental rights will not be disturbed unless it is against the manifest weight of the evidence, *i.e.*, unless an opposite conclusion is clearly apparent. *In re R.K.*, 247 Ill. App. 3d 512 (1993). Great deference is given to the trial court's decision, since the trial court's opportunity to evaluate the parties' credibility and the evidence is superior to that of the reviewing court. *In re B.C.*, 247 Ill. App. 3d 803 (1993).

■ In the instant case, defendant contends that the circuit court's November 2, 1994, order, finding him unfit and terminating his parental rights, contains inconsistent findings that contradict the circuit court's ultimate conclusion of unfitness and renders it against the manifest weight of the evidence.

The circuit court's first basis for finding defendant unfit was that he "failed to maintain a reasonable degree of interest concerning responsibility as to the child's welfare." However, the circuit court went on to find that defendant exercised his right to supervised visitation, although irregularly, during the period of August through October 1992; that he attempted to contact the child in March, Easter, and May of 1993, and April of 1994; and that motions for visitation filed by defendant were pending in the parties' dissolution proceeding.

The circuit court's second basis for finding defendant unfit was that he "failed to maintain contact with or plan for the future of the child although physically able to do so." The circuit court noted, however, that an *ex parte* emergency order of protection against defendant was issued August 14, 1992, and extended to October 22, 1992; and a plenary order of protection against defendant was entered February 26, 1993, which expired September 1, 1994, and provided him with "no visitation."

Where a parent's attempt to see a child has been officially frustrated, it is the intent to establish and/or maintain contact with the child rather than actual contact that is determinative. *In re Overton*, 21 Ill. App. 3d 1014 (1974).

In *Overton*, a mother was prevented from maintaining contact with her children due to interference from a Department of Children and Family Services (DCFS) caseworker. The caseworker did not expressly refuse her the right to see her children, but he did not encourage her to see them, as he felt it was in their best interest that she not visit them. For the good of her children, the mother obeyed the caseworker's communications. The court noted, *inter alia*, that if the mother did not visit her children the DCFS was willing to and did file a petition alleging that she did not show reasonable interest in them; yet, if she insisted upon seeing her children, the caseworker may not have recommended the return of the children to her. Under these circumstances, the court found that the caseworker's conduct insured that once the mother was separated from her children, she would eventually lose them permanently. Therefore, the finding that the mother failed to maintain a reasonable degree of interest, concern, or responsibility as to her children was reversed.

Defendant was similarly situated. Any attempt to visit the child placed him in violation of a court order; however, if he obeyed the order of protection and stayed away, he risked failing to maintain contact with the child.

A review of the record indicates that defendant demonstrated his intent to establish and/or maintain contact with the child by exercising, although irregularly, his supervised visitation during August, September, and October 1992. Defendant acknowledged that he failed to see the child from October 1992 to October 1994, but explained that it was his understanding that the order of protection prohibited him from any contact whatsoever with the child during that period. Despite this understanding, however, defendant attempted visitation in March, Easter, and May 1993, and April 1994, by placing phone calls and sending registered mail correspondence to Kelly. Kelly testified that because of the order of protection, she refused defendant's visitation requests and his request to give the child an Easter basket.

In light of the evidence supporting defendant's intent to establish and/or maintain contact with the child, coupled with the *ex parte* and the plenary orders of protection that officially frustrated defendant's visitation with the child, we find these facts are inconsistent with the circuit court's second basis for unfitness.

The circuit court's third basis for finding defendant unfit was

that he "failed to contribute to the child's support." The circuit court determined that defendant's child support arrearage was $2,000 in October 1992 and that he voluntarily made periodic payments in April 1994.

Defendant acknowledged that, in October 1992, he was in arrearage for child support in the amount of $2,000. The record shows that defendant began making payments in April 1994, at least three months prior to his awareness of the adoption proceedings. Importantly, the record indicates that at the time of these proceedings, at least $1,000 in support payments were being held in the clerk's office, in want of Kelly to claim them, and defendant testified that Kelly failed to cash approximately $2,000 in money orders that defendant originally paid to her via her father.

Kelly acknowledged that she had not inquired at the clerk's office concerning support checks, had not given the clerk's office her address, and had stated that she did not need the checks because the child was being provided for. Kelly testified that she never made demands upon defendant for any type of payment. We find these facts to be inconsistent with the circuit court's third basis for unfitness.

The circuit court's final basis for finding defendant unfit was that he "had been habitually addicted to drugs and alcohol, other than as prescribed by a physician for at least one year immediately prior to the commencement of these proceedings." The circuit court, however, went on to find that defendant has been free of the use of alcohol and drugs since December 8, 1993.

The Act is clear that the focus period of being habitually addicted to drugs and alcohol is "at least one year immediately prior to the commencement of the unfitness proceeding." 750 ILCS 50/1(D)(k) (West 1994). The record establishes that defendant was clean and sober three months prior to the March 1994 commencement of the adoption, seven months prior to his July 1994 awareness of the proceedings, and 10 months prior to the October 1994 fitness hearing. These facts are inconsistent with the circuit court's final basis for unfitness. Further, the record contains sufficient evidence that establishes defendant is a recovering addict, who is maintaining his sobriety, working his program, assisting others in their recovery, and accepting his responsibilities.

## CONCLUSION

The Regans failed to prove by clear and convincing evidence that defendant met the elements of unfitness set forth in the Act. We find, therefore, that the circuit court's unfitness finding and termination

of defendant's parental rights was against the manifest weight of the evidence. Given our disposition of this issue, it is unnecessary to address defendant's final issue concerning the circuit court's grant of the Regans' petition for adoption without first conducting a best interest hearing.

Based upon the foregoing, the order of the circuit court of Will County finding defendant unfit and terminating his parental rights is reversed.

Reversed.

BRESLIN, P.J., and SLATER, J., concur.