NOTICE
Decision filed 05/23/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230046-U

NO. 5-23-0046

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* VANESSA M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Madison County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-JA-61 |
| | ) | |
| Shawn S. and Matthew S., | ) | |
| | ) | |
| Respondents | ) | Honorable |
| | ) | Amy Maher, |
| (Shawn S., Respondent-Appellant)). | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Moore and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where evidence amply supported the circuit court's conclusions that respondent was an unfit parent and that the child's best interests required terminating his parental rights, and any argument to the contrary would lack merit, we grant respondent's appointed appellate counsel leave to withdraw and affirm the circuit court's judgment.

¶ 2    After the circuit court terminated the parental rights of respondent, Shawn S., to his daughter, Vanessa M., he appealed. The court appointed counsel to represent him on appeal.

¶ 3    Appointed counsel has concluded, however, that she can make no reasonably meritorious argument that reversible error occurred. Thus, she has filed a motion to withdraw as counsel on appeal, together with a supporting memorandum. See *Anders v. California*, 386 U.S. 738

1

(1967). Counsel has notified respondent of this motion, and this court has provided him with ample opportunity to respond. However, he has not done so. After considering the record on appeal, counsel's memorandum, and her supporting brief, we agree that this appeal presents no reasonably meritorious issues. Thus, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 4                                           BACKGROUND

¶ 5     The minor was placed in foster care immediately upon her release from the hospital following her birth. The State filed a neglect petition against respondent and the minor's mother, Angela M. Briefly summarized, the petition alleged that respondent and Angela M. were being investigated in Illinois for sexual abuse committed against Vanessa M.'s sister, Lisa M. Moreover, respondent was "[i]ndicated by Missouri Child Services for an allegation which includes Fondling, Touching, Sodomy, Oral Sex, and Intercourse, 2015 and 2016." Further, respondent failed to provide any care or support for the minor.

¶ 6     The circuit court found that the minor was abused and neglected and made her a ward of the court. Following several interim orders, on August 6, 2020, the goal was changed from "return home" to "substitute care pending termination of parental rights." Angela M. passed away on December 14, 2021.

¶ 7     Consistent with the new goal, the State filed a petition to terminate respondent's parental rights, alleging that he (1) failed to make reasonable efforts to correct the conditions that were the basis for the removal of the child during any nine-month period after October 1, 2019; (2) failed to make reasonable progress toward the return of the child during the same period; (3) failed to maintain a reasonable degree of interest, concern, or responsibility for the minor's welfare; and

2

(4) was incarcerated as a result of a criminal conviction, which would prevent him from discharging his parental responsibilities for more than two years.

¶ 8 At the termination hearing, Julie McKay testified that she was one of the caseworkers and had reviewed the entire file. Respondent had an open case with Vanessa M.'s sibling as well as a previous case with the Missouri Department of Children and Family Services. Respondent had recently been convicted of sexual assault and sexual abuse and had been sentenced to 29 years in the Department of Corrections.

¶ 9 The first service plan required respondent to complete a domestic violence assessment and follow all recommendations; complete a psychosexual evaluation and follow all recommendations; complete a general mental health assessment and follow all recommendations; and complete a parenting class. Respondent had completed the parenting class. He had completed the domestic violence assessment but did not follow up on the recommendation that he participate in 26 classes. He had completed the psychosexual evaluation but did not follow up on recommended treatment. He had completed the mental health evaluation and participated in some counseling but made little progress.

¶ 10 Respondent was allowed weekly video visitation which he had exercised regularly until his incarceration. According to McKay, respondent did not want to visit with the minor while in prison. McKay opined that respondent had not made reasonable progress toward correcting the conditions that brought Vanessa M. into care and that his rights should be terminated.

¶ 11 On cross-examination, McKay testified that she visited respondent at the Shawnee Correctional Center. Respondent was provided with a written copy of each service plan, including the results of the assessments and recommendations for future treatment. He had also been present on multiple calls where his services were discussed.

¶ 12    McKay said that the services necessary for respondent to complete his service plan were available to him while in prison.  She acknowledged, however, that they were not available in the county jail where respondent was held for more than a year.

¶ 13    Respondent testified that, after completing the domestic violence assessment, he was never told that he needed to take 26 classes.  Rather, the instructor told him that the agency would contact him directly if he needed to do anything further.  The agency did call him once, but never called back to set up the sessions.  Similarly, he completed the psychosexual assessment.  The evaluator said that she would call if anything further were required, but no one from the agency ever called.  He explained that he wanted to visit with his daughter while in prison.  However, each video session cost $10 and he could not afford it.

¶ 14    Respondent said that he was appealing his conviction.  He believed that it would be overturned and thus he would not have to serve the entire 29-year sentence.  On cross-examination, respondent acknowledged that he did not then have a job or place to live but would after his conviction was reversed.  He admitted that Vanessa M. had been in care for three years and he was still not in position to provide for or take custody of her.

¶ 15    The prosecutor argued that a certified copy of respondent's conviction showed that it followed a guilty plea.  Thus, it was unlikely that an appeal would result in an outright reversal of his conviction.  Respondent insisted, however, that the conviction followed a trial.

¶ 16    The court found that respondent had made neither reasonable efforts nor reasonable progress.  The court clarified that it was considering only the period prior to respondent's incarceration and would not consider his progress or lack thereof while incarcerated.  The court noted that, although respondent had completed some tasks, he had not addressed the primary underlying issue of "psychosexual violence," which brought the case to the court's attention in the

4

first place. The court further found that it was likely that respondent would continue to be incarcerated for more than two additional years.

¶ 17 The court proceeded immediately to a best-interests hearing. McKay testified that Vanessa M. has been in the same foster home since she was discharged from the hospital in March 2019. The household includes four other adoptive children, one of whom is Vanessa M.'s half-sister. Vanessa M.'s foster mother is a teacher who is able to support her.

¶ 18 McKay observed Vanessa M. in the home and believed that she is bonded to the foster parent, as well as the other adults and children in the home. The home meets DCFS requirements and is a licensed foster home. Vanessa M. has a significant bond with her half-sister and gets along with the other foster siblings in the home. The foster mother meets all of Vanessa M.'s medical, dental, and emotional needs and is able to support her financially and emotionally. She has signed a permanency commitment.

¶ 19 Respondent testified that he loved his daughter and wanted to be a part of her life. The guardian *ad litem* recommended that rights be terminated. She noted that the minor required permanency, but the case had been pending for more than three years and respondent would likely continue to be incarcerated, whether for "25 years or a few years if the appeal was successful." The court agreed, finding that Vanessa M.'s best interests required a stable home, which respondent was not able to provide.

¶ 20 Respondent moved to reconsider on the basis of newly discovered evidence. At a hearing, he described the evidence as a recording of a phone message that Lisa M. allegedly left for an uncle about what the uncle was doing to her. Respondent believed that this would prove his innocence. On cross-examination, he acknowledged that the evidence was available to him prior

5

to the termination hearing. He provided the message to his attorneys, but it was not presented either in the criminal proceeding or in the termination proceeding.

¶ 21  The court denied the motion to reconsider, finding that the message was not newly discovered evidence because respondent knew about it before the termination hearing. Respondent timely appeals.

¶ 22                                    ANALYSIS

¶ 23  Appellate counsel concludes that there is no reasonably meritorious argument that the court erred in finding respondent an unfit parent and terminating his parental rights to Vanessa M. Counsel further concludes that there is no arguable merit to a contention that respondent's counsel was ineffective. We agree.

¶ 24  To terminate a party's parental rights, a circuit court must make two separate and distinct findings: that the State has proven (1) that the parents are "unfit persons" within the meaning of section 1(D) of the Adoption Act (Act) (750 ILCS 50/1(D) (West 2020)) and (2) that it is in the children's best interests to terminate that party's parental rights, to appoint a guardian, and to authorize that guardian to consent to the children's adoption. *In re M.H.*, 2015 IL App (4th) 150397, ¶ 20 (citing 705 ILCS 405/2-29(2) (West 2014)).

¶ 25  The court found that respondent failed to make reasonable progress toward the minor's return. The benchmark for measuring a parent's "progress toward the return of the child" under section 1(D)(m) of the Act (750 ILCS 50/1(D)(m) (West 2020)) measures the parent's compliance with the service plans and the court's directives in light of the conditions that gave rise to the child's removal and other conditions subsequently discovered that would prevent the court from returning the child to the parent. *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001).

6

¶ 26    Here, McKay testified that respondent failed to follow the service plan for more than nine months prior to being incarcerated.  Although respondent completed a parenting class and obtained several evaluations, he failed to follow up on any of the recommended treatment.  McKay stated that respondent was sent copies of the service plan, which included the treatment recommendations, and participated in meetings at which the plans were discussed.  Respondent conceded that he attended at least one court hearing at which his lack of progress was discussed.  In light of this testimony, the court could reasonably reject respondent's testimony that each of the evaluators he spoke to told him that he did not need to do anything further unless someone contacted him and that, except for one preliminary phone call, no one ever did.

¶ 27    As the State proved that respondent was unfit for failing to make reasonable progress toward the child's return, we need not consider any other basis of unfitness.  See *In re M.J.*, 314 Ill. App. 3d 649, 655 (2000) (on review, if there is sufficient evidence to satisfy any one statutory ground, we need not consider other findings of parental unfitness).  We can affirm the circuit court's order solely on this basis.

¶ 28    Counsel further suggests that there is no reasonably meritorious argument that the circuit court erred in finding that the minor's best interests required terminating respondent's parental rights.  Even if a parent has been found unfit to have custody of a child, it does not necessarily follow that the parent cannot remain the child's legal parent with attendant rights and privileges.  *In re B.C.*, 247 Ill. App. 3d 803, 806 (1993).  However, once the court has found a parent unfit, all other considerations must yield to the child's best interests.  *In re D.M.*, 298 Ill. App. 3d 574, 581 (1998).

¶ 29    Here, McKay testified that Vanessa M. had resided solely with her foster parent since her release from the hospital at birth, that her half-sister also resided in the home, and that her foster

7

mother had provided for her needs throughout her life. She was bonded with her foster mother, caregivers, and foster siblings. Respondent acknowledged that he had no contact with his daughter since being incarcerated. During the fitness hearing, he conceded that he was not then capable of providing for Vanessa M. and had no idea when he would be able to do so. Thus, the court's finding that Vanessa M.'s best interests required terminating respondent's parental rights was not manifestly erroneous.

¶ 30    Counsel finally suggests that there is no meritorious contention that respondent received the ineffective assistance of counsel. In deciding whether a parent received ineffective assistance in a proceeding to terminate his or her parental rights, we apply the criteria found in *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 42. Under *Strickland*, a parent must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that, but for counsel's errors, the result of the proceedings would likely have been different. Further, a respondent must overcome the strong presumption that, under the circumstances, the challenged action or inaction was the product of sound trial strategy. *People v. Barrow*, 133 Ill. 2d 226, 247 (1989).

¶ 31    Here, respondent was represented at all hearings—at least those that were transcribed— and his counsel appropriately cross-examined the State's witnesses and presented respondent's version of events. Respondent never explicitly complained about counsel's representation. The only possible exception concerned the "newly discovered" evidence of Lisa M.'s phone call to her uncle. Respondent conceded that he knew of this evidence before the fitness hearing, explaining that he had given the recording to his attorneys but that it was never introduced in evidence. However, respondent never explicitly asserted that counsel was ineffective for not introducing the

recording and, with only respondent's vague description of the evidence in the record, the decision not to introduce it appears to fall easily within the presumption of sound trial strategy.

¶ 32   Even if respondent could establish that the failure to introduce the recording was unreasonable, he could not establish the requisite prejudice.  Even if the recording conclusively established defendant's innocence in the criminal case—a dubious proposition on this record—it would, at most, establish that he would no longer be incarcerated.  This would not affect the finding that he failed to make reasonable progress prior to his incarceration, and as noted, that ground alone was sufficient to support the finding of unfitness.

¶ 33                                                    CONCLUSION

¶ 34   As this appeal presents no issue of arguable merit, we grant appellate counsel leave to withdraw and affirm the circuit court's judgment.

¶ 35   Motion granted; judgment affirmed.

9