NOTICE

Decision filed 11/22/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240838-U

NOS. 5-24-0838, 5-24-0839 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* ALIEHNA R. and SAMUEL T., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Madison County. |
| | ) | |
| Petitioner-Appellee, | ) | Nos. 21-JA-115, 21-JA-208 |
| | ) | |
| v. | ) | |
| | ) | |
| Courtney L., | ) | Honorable |
| | ) | Maureen D. Schuette, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Moore and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Evidence amply supported the circuit court's findings that respondent was unfit and that the minors' best interests required terminating her parental rights. As any contrary argument would be frivolous, we allow appointed counsel to withdraw and affirm the circuit court's judgment.

¶ 2    Respondent, Courtney L., appeals the circuit court's orders finding her an unfit parent and terminating her parental rights to Aliehna R. and Samuel T. Her appointed appellate counsel concludes that there is no issue that could support an appeal. Accordingly, she has filed a motion to withdraw as counsel, along with a supporting memorandum. See *Anders v. California*, 386 U.S. 738 (1967). Counsel has notified respondent of this motion, and this court has provided her with ample opportunity to respond. However, she has not done so. After considering the record on

1

appeal and counsel's motion and supporting memorandum, we agree that there is no issue that could support an appeal. Accordingly, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4     In 2021, the State filed separate petitions alleging that each minor was abused and neglected. Respondent is the mother of both children, but they have separate fathers, neither of whom is a party to this appeal.

¶ 5     The petition regarding Aliehna R. alleged that respondent's paramour used illegal substances in the minor's presence. Respondent continued to allow him in her home around the children without adequate supervision and had not cooperated with intact services.

¶ 6     With regard to Samuel T., the State alleged that respondent had substance-abuse issues that hindered her ability to parent and had tested positive for fentanyl before his birth. She had a history of involvement with the Department of Children and Family Services (DCFS), including "indicated" findings for abuse and neglect, and had failed to cooperate with intact services.

¶ 7     Following separate hearings, the trial court found probable cause for removing the minors from their parents. Initial service plans required respondent to cooperate with DCFS, obtain substance-abuse treatment, complete a domestic-violence assessment and any recommended services, complete a parenting class, and obtain a mental-health assessment.

¶ 8     Subsequent reports noted that respondent was cooperating with DCFS and had been successfully discharged from substance-abuse treatment. Respondent told the caseworker that she had completed a parenting class. She was screened for mental-health services and referred for treatment.

¶ 9    Reports filed over the ensuing years showed that respondent sometimes received satisfactory ratings for substance-abuse treatment and mental-health counseling. However, her attendance at these programs was inconsistent.

¶ 10   In November 2023, the court interviewed Aliehna in the presence of the guardian *ad litem.* She said that she did not like Samuel T.'s father, Chase T. He was a drug addict who took a drug that made "him go all psychopath." He would "go in the bathroom, take forever, and next thing you know, not good." He would hurt her, her mother, and her brother, Johnny. He once threw Johnny against a wall.

¶ 11   Aliehna said that respondent would leave her and her brother alone with Chase. Respondent frequently had to call the police on Chase. She did not feel that she and Samuel could go back to her because she could not care for Samuel without a nurse present. During a visit, Aliehna and her mother got into an argument that got "out of hand," and she no longer felt comfortable around her mother.

¶ 12   Aliehna loved her foster parents and did not want to leave them. She felt safe, cared for, and loved there. The foster parents encouraged her education. By contrast, she had "zero education" when she lived with respondent because no one took her to school.

¶ 13   Ultimately, on February 26, 2024, the State petitioned to terminate respondent's parental rights. At the hearing, Sarah Vavnais, a foster care specialist for Caritas Family Solutions, testified that the minors were taken into custody because of domestic violence between respondent and Jonathan T. that occurred in the children's presence.

¶ 14   The initial service plan required respondent to cooperate with the agency, obtain and maintain sobriety, complete domestic violence counseling, obtain mental health treatment and "parenting." As to the first task, respondent generally maintained contact with the agency, but

3

would often become "angry and hostile," resulting in meetings being ended early. Respondent did not always update Vavnais about things such as her work schedule, and thus was rated unsatisfactory.

¶ 15   Respondent was asked to complete an assessment but denied that she had any substance-abuse issues. However, in August 2021, she told a previous caseworker that she was abusing over-the-counter cough medicine and was going to go in-patient treatment for it. Since her last appointment in February 2023, respondent had had multiple "no shows" and did not follow through with a request to obtain another assessment.

¶ 16   On mental health, respondent was initially compliant with treatment but stopped attending counseling in early 2023. She had not refilled her medication since then. Similarly, respondent initially attended domestic-violence classes. However, the agency continued to have concerns about domestic violence with Jonathan T. He was believed to be residing in the home, and the police were frequently called.

¶ 17   Respondent completed a parenting class, but the agency remained concerned about her ability to "demonstrate healthy parenting during visits." Samuel T. had special medical needs that required the use of a feeding tube. However, despite receiving training in using the tube, respondent continued to require assistance during the visits. Additionally, "there were a lot of inappropriate conversations that caused Aliehna to leave the visit and then stop attending" visits altogether.

¶ 18   Respondent was mostly consistent with visitation. She attended a few appointments for Samuel's special needs but was not consistent. She did not provide intangible support for the minors. Overall, Vavnais concluded that respondent was unfit given her failure to make progress toward completing the service plans.

4

¶ 19    Haley Zirkelbach testified that she was assigned to the case in December 2023. She had observed most of the visitations between respondent and the minors. While she was on the case, visits with Aliehna did not go well, as she did not want to participate in any of them. Sam continued to have medical issues that respondent was unable to address during the visits. Sam relied heavily on the nursing staff and caseworkers. Respondent had not inquired about the minors or attended Samuel's appointments while Zirkelbach was assigned to the case.

¶ 20    Respondent testified that she had completed domestic-violence counseling and substance-abuse treatment and had consistently passed drug tests. She had completed mental-health counseling and was told that she no longer needed treatment.

¶ 21    The court, noting that respondent was unable to document her completion of various programs, found her unfit for failing to make reasonable efforts or reasonable progress, and for failing to maintain a reasonable degree of interest, concern, or responsibility for the welfare of either child. The court thus proceeded to the best-interests portion of the hearing.

¶ 22    Zirkelbach testified that the minors had been placed with the same foster parents since 2021. The home had no other residents except a dog and both foster parents had passed background checks. The minors appeared happy and comfortable in that environment. They were being taken care of and Zirkelbach had no concerns about their safety. The parents had gone through specialized training to be able to meet Samuel's medical needs. Both parents had signed permanency commitments and were willing to complete the adoption. Zirkelbach believed it was in the minors' best interests to be adopted by the foster parents. The guardian *ad litem* concurred in this recommendation.

¶ 23    The court found it was in the minors' bests interests to terminate respondent's parental rights, allowing them to be adopted by the foster parents. Respondent timely appealed.

5

¶ 25    Respondent's appointed counsel concludes that there is no reasonably meritorious argument that the court erred in finding respondent unfit or terminating her parental rights. A proceeding to terminate a party's parental rights under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)) occurs in two stages. *In re Deandre D.*, 405 Ill. App. 3d 945, 952 (2010). First, the State must establish that the parent is "unfit to have a child" under one or more of the grounds in the Adoption Act. *In re D.T.*, 212 Ill. 2d 347, 352 (2004); see 750 ILCS 50/1(D) (West 2022). At the unfitness hearing, the State bears the burden of proving, by clear and convincing evidence, that the parent is unfit to have a child. See *In re D.W.*, 214 Ill. 2d 289, 315 (2005).

¶ 26    Here, although respondent participated in some services, the record supports the court's finding that she failed to make reasonable efforts or reasonable progress. She was frequently hostile toward the agency and often missed appointments. She was apparently no longer attending substance-abuse or mental-health counseling. She had not progressed in being able to attend to Samuel's medical needs and got into frequent arguments with Aliehna to the point that Aliehna no longer wanted to attend visits. The court heard evidence that she continued to maintain a relationship with Jonathan T. despite a history of domestic violence between the two that often occurred in the children's presence.

¶ 27    Counsel further concludes that no meritorious argument exists that the court erred in terminating respondent's parental rights. Once a parent is found unfit, the trial court moves on to the second stage of termination proceedings, which involves a determination of whether it is in the minor's best interest to terminate parental rights. At this stage, the State must demonstrate, by a preponderance of the evidence, that the termination is in the minor's best interest. *In re D.T.*, 212

Ill. 2d at 366-67. Even if a parent has been found unfit to have custody of a child, it does not necessarily follow that the parent cannot remain the child's legal parent with attendant rights and privileges. *In re Vanessa M.*, 2023 IL App (5th) 230046-U, ¶ 28. However, once the court has found a parent unfit, all other considerations must yield to the children's best interests. *Id.*

¶ 28    The evidence here showed that the children were happy and well cared for in their foster home. The foster parents had undergone training to meet Samuel's medical needs. They were committed to adopting the children. Aliehna, who was 13 at the time of the hearing, had expressed her preference to remain with the foster parents. Thus, the evidence supported the court's finding that the children's best interests would be served by terminating respondent's parental rights.

¶ 29                                    CONCLUSION

¶ 30    As this appeal presents no issue of arguable merit, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 31    Motion granted; judgment affirmed.